```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    **CENTRAL DIVISION at LEXINGTON**
```

HITACHI AUTOMOTIVE SYSTEMS     )
AMERICAS, INC.,                )
                               )        Case No.
      Plaintiff,               )      5:19-cv-184-JMH
                               )
v.                             )     **MEMORANDUM OPINION**
                               )        **AND ORDER**
TI AUTOMOTIVE LIGONIER         )
CORPORATION,                   )
                               )
      Defendant.               )

                              ***

This matter comes before the Court upon Plaintiff Hitachi Automotive Systems Americas, Inc.'s ("Hitachi") Motion for Temporary, Preliminary, and Permanent injunctive Relief [DE 3] requesting the Court order TI Automotive Ligonier Corporation ("TI") to immediately resume production and shipment of certain parts pursuant to revised design specifications. [DE 3-1, at 20-21]. On April 26, 2019, the Court denied Hitachi's Motion [DE 3], insofar as it pertains to the request for a temporary restraining order, set the request for a preliminary injunction for a May 1, 2019 motion hearing, and directed the Parties to file briefs in support of their respective positions. [DE 9]. Having reviewed Hitachi's Motion [DE 3] and the Parties' respective briefs [DE 15; DE 16] and heard the Parties oral arguments during the May 1, 2019 motion hearing, and being otherwise sufficiently advised, the

Court will deny Hitachi's Motion for Temporary, Preliminary, and Permanent Injunctive Relief [DE 3].

## FACTUAL AND PROCEDURAL BACKGROUND

Hitachi Automotive manufactures automotive systems for major automotive manufacturers. [DE 3-1, at 3]. To that end, Hitachi has multiple contracts with TI for the supply of automotive parts. *Id.* Two of those requirement contracts appear to be relevant to the instant Motion [DE 3].

On February 26, 2016, the parties entered into Requirements Contract No. B015833 ("Gen-1 Requirements Contract") where TI agreed to manufacture and supply 100% of Hitachi's requirements for Gen-1 LFY LH Rail parts. [DE 3-1, at 4; DE 3-2, at 2]. Then, on August 4, 2016, the Parties entered into Requirements Contract No. B015894 (".675T Requirements Contract") where TI agreed to manufacture and supply 100% of Hitachi's requirements for .675T Bare Fuel Rail parts. [DE 3-1, at 4; DE 3-3 at 2]. Hitachi asserts that both parts are critical components in Hitachi's fuel rail systems.[1]

A "special note" at the bottom of the contracts expressly limits the requirements contracts to the terms stated in the contracts themselves "and the terms and conditions of purchase set

---

[1] The Court will refer to the Gen-1 Rail parts and the .675T Bare Fuel parts as "the parts" collectively and the two parts connected together as "the part." Similarly, the Court will refer to the requirements contracts collectively as "the contracts."

2

forth in Hitachi Automotive Systems Americas, Inc.'s, Supplier Handbook." See [DE 3-2; DE 3-3 (emphasis omitted)]. Pursuant to the terms and conditions, time is of the essence, and TI is obligated to manufacture and deliver the parts to Hitachi on the delivery date, in conformity with specific engineering requirements, and for the contractually agreed price certain per part. [DE 3-1, at 5].

But the present dispute relevant to this Motion [DE 3] is about design changes to the parts that Hitachi claims it is contractually permitted to make. Section 15.9 of the terms and conditions states the following:

> These terms may be modified only in writing signed by authorized representatives of buyer and supplier. However, buyer may, at any time, by written change order, make changes in: . . . (B) the drawings, designs or specifications applicable to the goods or services covered by this order. . . . If such changes materially affect the time for performance, the cost of manufacturing the goods, or the costs of furnishing services, buyer will make an equitable adjustment in the purchase price or the delivery schedule or both. Any dispute with respect to an equitable adjustment shall not relieve seller of its obligation to perform in accordance with a written change order.

[DE 3-4, at 11].

According to Hitachi, in November 2018, General Motors ("GM") mandated a change in specifications pertaining to the parts at issue through an Engineering Work Order ("EWO"). [DE 3-1, at 6]. To effectuate these mandated changes, Hitachi claims that on December 13, 2018, it notified TI of the requested specification

3

changes. *Id*. According to Hitachi, the Parties worked together for several months to implement the EWO change and eventually reached a solution to the specification change that was ready to be submitted to GM for testing and approval. *Id.*

Subsequently, Hitachi claims that they submitted a request for quotes to TI regarding additional costs for the parts based on the change in specifications.[2] *Id.* Hitachi claims that TI only responded to the request for quote for the .675T Bare Fuel Rail parts, as evidenced by an email from Scott Hacias, Senior Manager of Business Development at TI, and that the offered quote was 11% higher than the original price per part. [DE 3-1, at 7; DE 3-5, at 4-5]. Also, Hacias's email provided a lead time for the prototype of six to seven weeks and a production lead time of fourteen weeks. [DE 3-5, at 4-5].

On April 8, 2019, Anne Wells, a Hitachi Procurement Manager, followed-up on the quoted price, stating in part:

> GM is pushing hard for a cost breakdown for quotes (see summary below).
>
> The quote is much higher than expected and we need a cost breakdown to better understand the cost drivers so that we can better explain.

---

[2] Hitachi sent an email inviting TI to offer a quote for one of the parts, apparently the .675T Bare Fuel Rail, on April 2, 2019. *See* [DE 3-5 at 5-6]. Hitachi claims they also sent an offer for quote for the Gen-1 Rail parts on March 25, 2019, but there is no apparent objective proof of this offer in the record before the Court.

> It seems they are unwilling to wait until Scott's return next week and have demanded that we escalate which is the cause for this email. If there any way you would have someone that could support us in completing the attached worksheet in support of the submitted quote?

[DE 3-5, at 3-4].

Then, relations apparently soured. In response to Hitachi's request for a cost breakdown, Todd Pontillo, a TI employee, responded to Wells's email and said the following:

> As a general matter, Hitachi has not demonstrated any willingness to work with, or have a collaborative or cooperative partnership with, TI. As such, TI is not interested in expanding our commercial relationship with Hitachi in any way.
>
> TI withdraws its prior engineering estimate for this new product design/specification and will not be providing any further estimates or quotes. Instead, we are only willing to supply the product in accordance with current contract specifications.

[DE 3-5, at 3].

On April 11, 2019, Wells responded, saying in relevant part:

> I am sure you are aware that this is not an expansion of business, however, it is for contracted business that TI Automotive is currently providing.
>
> The change is directed by the OEM and our Terms and Conditions clearly allow Hitachi to do so.
>
> We have made multiple attempts to provide TI with the opportunity to provide costs associated with the customer directed engineering change.
>
> If Hitachi does not receive updated cost that accurately detail the change, we will be forced to assume that TI has no cost impact and will take necessary steps to implement.

> Your response is appreciated by the COB today, as GM has become very impatient due to the lack of response from TI Automotive.

[DE 3-5, at 2]. It does not appear that TI responded to Wells's April 11th email. Hitachi claims that it uploaded the revised specification drawings on the supplier portal on April 17, 2019. [DE 3-1, at 7].

Next, on April 19, 2019, Hitachi sent a demand letter to TI asserting that TI was refusing to supply parts that it was contractually obligated to supply and requesting assurance of compliance by noon on Monday, April 22, 2019. [DE 3-6, at 2-4]. In response, TI sent a letter dated April 23, 2019, claiming that the new design specification requested by Hitachi constituted a new part for which there was no requirements contract in place. [DE 3-7, at 2]. Additionally, TI stated that it "would prefer to resolve this matter amicably without further escalation, if possible. To that end, and as a sign of good faith, TI Ligonier is prepared to engage in further dialogue with Hitachi in an effort to reach a resolution." *Id*. TI stated that "[a]ny resolution will need to include steel surcharges, steel tariffs, and other commercial issues." *Id.* Finally, TI asserted that Hitachi was in breach for failure to pay steel surcharges and tariffs and asserted that "TI Ligonier cannot afford and is not obligated to continue taking on this significant and growing financial risk." *Id.* at 2-3].

On April 25, 2019, Hitachi filed a Verified Complaint [DE 1] in the above-captioned action claiming TI Ligonier had breached the contracts by refusing to take necessary steps to supply parts that comply with the safety critical design specifications supplied by Hitachi, for failing to sort certain parts, and for failure to attend weekly quality assurance meetings. [DE 1, at 11-12]. Hitachi's Verified Complaint [DE 1] seeks declaratory judgment and specific performance. [*Id.* at 12-16].

On April 25, 2019, Hitachi filed the present Motion [DE 3] requesting a temporary restraining order, preliminary injunction, and permanent injunction ordering TI to immediately resume production and shipment of the Gen-1 LFY LH rail parts and the .675T Bare Fuel Rail parts. [DE 3]. On April 26, 2019, the Court denied Hitachi's Motion [DE 3], insofar as it pertains to Hitachi's request for a temporary restraining order, set the request for preliminary injunction for a May 1, 2019 motion hearing, and allowed the Parties to file briefs in support of their respective positions on or before April 30, 2019. [DE 9]. On April 30, 2019, both Hitachi and TI filed briefs pertaining to Hitachi's request for a preliminary injunction. [DE 15; DE 16]. On May 1, 2019, the Court held the previously mentioned motion hearing, found Hitachi was not entitled to a preliminary injunction because the alleged revised design specifications of the current parts are, in fact,

new parts, and explained to the Parties that this separate Order elaborating on the Court's findings would be entered. [DE 17].

## STANDARD OF REVIEW

When a party seeks a preliminary injunction, the Court must consider the following four (4) factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *see also Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016). These are "factors to be balanced, not prerequisites that must be met." *Tenke Corp.*, 511 F.3d at 542. For example, where a party makes "an extremely strong showing of irreparable harm" they are "not required to make as strong a showing of a likelihood of success on the merits." *Stein*, 672 F. App'x at 569. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000)). The relevant factors are considered below.

**DISCUSSION**

**A. HITACHI'S LIKELIHOOD OF SUCCESS ON THE MERITS**

Hitachi has not shown that it is likely to succeed on the merits. While no single factor is controlling when determining whether a preliminary injunction should issue, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997)). Having reviewed the Parties' Briefs [DE 15; DE 16] and heard their oral arguments regarding Hitachi's request for a preliminary injunction, the Court finds that Hitachi's requested changes to the part are not merely revisions to the currently existing part. Instead, the part is a new part that TI has no obligation to produce absent a contractual agreement to do so.

Specifically, based on the comparison illustration of the current part and the new part provided by TI at the May 1, 2019 Motion Hearing, the thread depth must increase by 1.26 millimeters, the cone surface must undergo a substantial reduction to prevent leaks, and the diameter of the through hole must greatly increase. Even a cursory glance at the comparison illustration reveals the difference between the current part and the new part is so significant that it cannot be described as a mere revision.

Moreover, Hitachi labeled the two pieces of the new part with new part numbers. The current parts are labeled HL500706 and HL500777, and the new parts are labeled HL500935 and HL500941. [DE 15, at 7]. At the May 1, 2019 Motion Hearing, Hitachi argued the new part numbers are not indicative of the parts being new because Hitachi gives all its revised parts new part numbers to allow workers to track which part is which, so they do not use the wrong part during assembly. Hitachi asserted that without a new part number, it would be easy for a worker to mistake the current part for the new part. The Court finds this argument unavailing. First, the changes to the cone surface and through hole alone are different enough that it would be difficult to mistake the current part for the new part. Second, whether Hitachi customarily gives new part numbers to revised parts is immaterial because as discussed previously herein, the two pieces to the new part not only have new part numbers, but based on the alterations to the part, it is, indeed, a new part with pieces that have new part numbers.

For the foregoing reasons, Hitachi is unlikely to succeed on the merits. The Verified Complaint [DE 1] includes claims of breach of contract, declaratory judgment, and specific performance, which are all related to TI's alleged failure to perform its obligations under the contracts by failing to take the steps necessary to supply the parts. However, there is no contractual agreement

10

regarding the new parts, so TI could not have breached the contract. Furthermore, without a contractual agreement between the Parties, the Court cannot order TI to make parts that it has not agreed to make. Accordingly, based on the foregoing analysis, Hitachi has failed to provide sufficient proof to demonstrate a substantial likelihood of success on the merits. As a result, the first factor weighs in favor of denying Hitachi's request for a preliminary injunction.

### B. IRREPARABLE INJURY WITHOUT THE INJUNCTION

Hitachi has failed to submit proof that it will suffer irreparable injury without some injunctive relief from this Court. "Irreparable harm is generally defined as harm that cannot be fully compensated by monetary damages." *Wilson v. Bd. Of Educ. Of Fayette Cty.*, 2015 WL 4397152 (E.D. Ky. July 16, 2015) (citing *Overstreet*, 305 F.3d at 578). "[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical." *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir. 1991) (citation omitted). "[The] standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S.C 7, 22 (2008) (citations omitted). Hitachi argues that the irreparable harm without an injunction would include harm to Hitachi, its employees,

its customers, and General Motors ("GM"), who relies on Hitachi for fuel rail systems. [DE 3].

The Court understands that if TI does not deliver the new parts to Hitachi that, in turn, Hitachi will be unable to manufacture and deliver parts to GM and potentially other automotive manufacturers, which could delay GM's manufacturing processes. Additionally, any delay in production of the fuel rail systems may potentially result in Hitachi suffering from a loss of good will with GM, which would also constitute irreparable harm. The Sixth Circuit and district courts have found that such harm is irreparable. *See TRW, Inc. v. Indus. Sys. Assocs. Inc.*, 47 F. App'x 400 (6th Cir. 2002) (per curiam) (finding irreparable harm where an automobile component supplier would have to shut down its operations); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); *Stryker Corp. v. Bruty*, No. 1:13-cv-288, 2013 WL 1962391, at *6 (W.D. Mich. May 10, 2013).

However, the irreparable harm Hitachi allegedly faces is not TI's fault, it is not TI's responsibility to prevent that harm, and it is not immediate. Arguably, the potential irreparable harm is neither party's fault. Without an agreement, TI is not obligated to manufacture and produce new parts to rectify Hitachi's present issue, which is the leaking of the current parts that are connected

12

to the fuel rail assemblies. The issue is that the current parts, which the Parties previously agreed were functional, turned out to be ineffective and unsafe because they allow fuel to leak. It does not appear either Hitachi or TI had reason to believe the current parts would cause a leak. While the Court understands Hitachi's urgency in getting new parts to meet GM's demands, Hitachi and TI are going to have to sit down and come to an agreement about the new parts, which TI asserts it is willing to do. Unfortunately, the turnaround time on the new parts may not be what Hitachi desires, but that is something the Parties will have to discuss in negotiations. Furthermore, since the Parties have not even agreed to make the new parts, and it would take TI at least twenty-one (21) weeks to have the new parts ready for production, the alleged irreparable harm is not immediate. The Court finds Hitachi will not suffer irreparable harm due to TI's alleged conduct.

### C. SUBSTANTIAL HARM TO OTHERS AND PUBLIC INTEREST

Regarding the potential for substantial harm to other parties that are not parties to this lawsuit, the Court finds there is no injunctive relief available that would prevent the possibility of harm to third-parties. While production delays at Hitachi may result in production delays at GM and other automotive manufacturers, injunctive relief is not helpful. Without a contract for the new parts, the Court is unable to require TI to make the new parts Hitachi needs, and the amount of time needed

for production and testing would likely be insufficient to prevent delays. Again, the only thing Hitachi can do to either prevent or shorten production delays is to come to an agreement with TI for the new parts.

As previously stated in the Court's April 26, 2019 Memorandum Opinion and Order [DE 9] denying Hitachi's request for a temporary restraining order, "[T]he public interest is best served in this instance by holding the parties to the terms of their agreement." [DE 9, at 16 (citing *Tenke Corp.*, 511 F.3d at 551 (ruling that holding Defendants to the terms of their agreement weighed in favor of injunctive relief))]. However, in the present case, there is no agreement for the new parts Hitachi requests the Court order TI to produce, so the Court cannot hold the Parties to the terms of the nonexistent contract. Ordering TI to produce something it has no contractual obligation to produce would go against the public interest and runs afoul of the the right to contract.

## **CONCLUSION**

Based on the foregoing reasons, Hitachi has failed to show that it is likely to succeed on the merits, that the absence of injunctive relief will result in either irreparable harm to Hitachi or substantial harm to others, and that the public interest weighs in favor of granting Hitachi a preliminary injunction. Accordingly,

**IT IS ORDERED** that Plaintiff Hitachi Automotive Systems Americas, Inc.'s Motion for Temporary, Preliminary, and Permanent injunctive Relief [DE 3] is **DENIED** in its entirety.

This the 6th day of May, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge